IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JAMES MILLER, *et al.* | § | |
| Vs. | § | CIVIL ACTION NO. 6:11CV22 |
| BAC HOME LOANS SERVICING, LP, *et al.* | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiffs James and Allene Miller filed the above-styled lawsuit on January 14, 2011.  The

case was  referred to the undersigned to conduct pretrial proceedings in accordance with 28 U.S.C. § 636

on August 23, 2011.  Defendants filed Motion to Dismiss Plaintiffs' First Amended Complaint

(document #32), which is the subject of this Report and Recommendation.

**Background**

In the First Amended Complaint, Plaintiffs allege that they purchased a home in Whitehouse,

Texas in December 2001, financed by a mortgage loan.  The mortgage was originally obtained from

Nexstar Financial Corp., but the note and deed of trust were later assigned to Bank of America, N.A.

("Bank of America").  According to Plaintiffs, the assignment was effective April 7, 2010.  BAC

Home Loans Servicing, LP ("BAC")[1] was the mortgage servicer for Plaintiffs' loan.  At some point,

Plaintiffs got behind on their mortgage payments.  Plaintiffs state that they received notice from

BAC dated March 10, 2010, notifying them that their loan was in default and that the loan would be

---

[1]Defendant states that Bank of America, N.A. is the successor to BAC Home Loans
Servicing, LP by merger.

accelerated and their home foreclosed upon unless the default was cured by April 9, 2010.  Plaintiffs

point out that the notice from BAC pre-dates the assignment of the loan to Bank of America.

Plaintiffs allege that they contacted BAC in an effort to cure the default and prevent

foreclosure.  Plaintiffs assert that BAC's agent informed them that the loan could be modified if they

qualified for a modification and that modification would cure the default and prevent foreclosure.

The agent allegedly stated that he would immediately send an application package, but it did not

arrive.  A second BAC agent allegedly reported no record of the previous application package being

sent and assured Plaintiffs that an application package would be sent.  Plaintiffs submit that the

package did not arrive and that a third BAC agent then made a similar promise to send the

application package.  According to Plaintiffs, this series of telephone calls from BAC agents

requesting payment and then promising to send a modification application package continued for

approximately two months.  During one of the phone calls, a BAC agent allegedly told Plaintiffs that

they did not need to make a payment on the loan because the delinquent payments would be wrapped

up into the modified loan when the modification was approved.

Plaintiffs state that they received a letter from a law firm, Barrett Daffin Frappier Turner &

Engel, LLP, dated May 3, 2010, stating that the law firm had been retained by BAC to initiate

foreclosure proceedings and that the foreclosure would occur on June 1, 2010.  When Plaintiffs

contacted the law firm to discuss any options available to avoid foreclosure, the firm's agent

allegedly told Plaintiffs to contact BAC to obtain a loan modification package.  Plaintiffs contacted

BAC and spoke to a foreclosure technician, Victoria Masters.  Ms. Masters allegedly told Plaintiffs

that she would get the foreclosure postponed because Plaintiffs were attempting to modify their loan.

Plaintiffs state that they received the loan modification application package on May 18, 2010 and

mailed the completed application to BAC on May 28, 2010. They state that they were informed that the application had to be submitted by June 17, 2010. Nevertheless, Plaintiffs complain that they were contacted by a BAC agent on May 28, 2010 and told that their home was scheduled to be sold on June 1, 2010. Plaintiffs called Ms. Masters on May 31, 2010 and she informed them that the foreclosure had not been postponed, but allegedly stated that she would try to get it approved by Fannie Mae. Plaintiffs do not explain the relationship of Fannie Mae to BAC. Ms. Masters allegedly told them later that day that she obtained approval for postponement, but needed to work out the details. The following day, the home was allegedly foreclosed upon by an employee and/or agent of National Default and the property was sold at a public auction. Plaintiffs vacated the home the following month at the request of the buyer.

Plaintiffs allege that they relied upon the representations of BAC agents to their detriment. Plaintiffs assert that they could have liquidated property or borrowed from family members to cure their default, but took no action to reinstate the loan as a result of the BAC agents' representations and promises. They further submit that there was a procedural defect in the foreclosure process because they did not receive notice of the appointment of the substitute trustee prior to foreclosure and the appointment was not filed prior to the foreclosure sale. Finally, Plaintiffs complain that the property's market value was $116,500.00, but it sold at the public auction for only $83,659.00. Plaintiffs seek relief against BAC pursuant to the FDCPA, the TDCA, and the DTPA. Plaintiffs additionally assert claims of fraud, negligent misrepresentation, and promissory estoppel against BAC. Against both BAC and National Default, Plaintiffs assert a state law claim for wrongful foreclosure. Plaintiffs seek an accounting from National Default and compensatory damages from Defendants.

Defendant BAC filed a Motion to Dismiss Plaintiffs' First Amended Complaint (document #32).  Defendant asserts that Plaintiffs' claims fail as a matter of law and seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(6).  Defendant asserts that the FDCPA does not apply to mortgage servicers. Further, Defendant submits that the complaint does not plead specific facts, as opposed to conclusory allegations, with respect to Plaintiffs' TDCA claim sufficient to rise to the level of plausibility. Defendant argues that Plaintiffs' DTPA claim also fails because Plaintiffs are not "consumers" as defined in the DTPA.  According to Defendant, Plaintiffs' fraud claim fails because Plaintiffs have not pled facts showing fraudulent intent and an alleged future promise does not support a fraud claim.  Defendant contends that Plaintiffs' negligent misrepresentation claim fails because Plaintiffs' claims are not based on an existing fact  and their promissory estoppel claims fail because of the statute of frauds and there was no promise to postpone the foreclosure sale.  Finally, Defendant asserts that Plaintiffs' have not stated a viable claim for wrongful foreclosure because the auction sales price was not grossly inadequate as a matter of law.

In response, Plaintiffs assert that the FDCPA only excludes mortgage servicers if the debt was not in default at the time of assignment.  Plaintiffs contend that their loan was in default when BAC became the loan servicer.  Plaintiffs further argue that the TDCA applies and that BAC used false representations and deceptive means to collect the debt.  Similarly, Plaintiffs submit that the DTPA is applicable.  Plaintiffs assert that they have complied with the requirements of Fed.R.Civ.P. 9(b) in pleading fraud and that some of their factual allegations state a claim for fraud, while others state a claim for promissory estoppel.  Plaintiffs argue that Ms. Master's promises form the basis for their promissory estoppel claim and the statute of frauds does not apply.  As to their claim for wrongful foreclosure, Plaintiffs submit that they are seeking damages, as opposed to seeking to void

or set aside the foreclosure sale, and they do not have to show that the sales price was grossly inadequate.  Defendant filed a reply brief and Plaintiffs filed a sur-reply.

## Discussion and Analysis

Motions to dismiss under Fed.R.Civ.P. 12(b)(6) are viewed with disfavor and are rarely granted.  *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982); *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir.1981).  In the context of a motion to dismiss pursuant to Rule 12(b)(6), courts are generally limited to the pleadings.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000).  When considering a motion to dismiss for failure to state a claim, the court must accept all of a plaintiff's allegations in the complaint as true.  *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir.2005). In addition, all reasonable inferences must also be drawn in the plaintiff's favor.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include facts that "raise a right to relief above the speculative level," and into the "realm of plausible liability."  *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 1965 and 1966 n.5 (2007).  In *Twombley*, the Supreme Court recognized that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Even though the complaint is to be construed liberally and in the light most favorable to the nonmoving party, a plaintiff must plead enough facts to state a claim that is at least plausible on its face.  *Id.* at 1973-74.  A claim must "be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 1969.  Although detailed factual allegations are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1964-

65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)).  A complaint must allege enough facts to move past possibility and on to plausibility of "entitlement to relief."  *Id.* at 1966. This standard is referred to as the "flexible plausibility standard."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

*Debt Collection*

Plaintiffs assert a FDCPA claim against BAC.  The stated purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  It is intended to protect both debtors and non-debtors from misleading and abusive debt-collection practices.  *See Wagstaff v. U.S. Dept. of Education*, 509 F.3d 661, 663 (5th Cir.2007). Among other things, the FDCPA prohibits debt collectors from making false or misleading representations and places limits on the communications between debt collectors and consumers when a debt collector is attempting to collect a debt.  *See generally*, 15 U.S.C. §§ 1692c, 1692e, 1692f and 1692g.

A "debt collector" is statutorily defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  In addition, the statute excludes a creditor attempting to collect a debt owned to them while using their own name or "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . .concerns a debt which was not in default at the time it was obtained by such

person." 15 U.S.C. § 1692a(6)(A) and (F)(iii).  Moreover, the term "creditor," as defined in the

FDCPA "does not include any person to the extent that he receives an assignment or transfer of a

debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C.

§ 1692a(4).   This provision has been construed to mean that both mortgagees and mortgage

servicing companies are not debt collectors and are statutorily exempt from liability.  *See Fouche'*

*v. Shapiro & Massey L.L.P.*, 575 F.Supp.2d 776, 783 (S.D.Miss. Aug. 5, 2008); *see also CA*

*Partners v. Spears*, 274 S.W.3d 51, 78-79 (Tex.App.–Houston [14th Dist.] 2008, pet. denied)

(quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985) ("[A] debt collector does not

include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long

as the debt was not in default at the time it was assigned.").  In general, creditors, as opposed to debt

collectors, are not subject to the FDCPA.  *See Brandon v. Wells Fargo Bank, N.A.*, 2011 WL

6338832 (E.D.Tex. Nov. 30, 2011) (adopted on December 19, 2011) (citing *Pollice v. National Tax*

*Funding, L.P.*, 225 F.3d 379, 403 (3rd Cir.2000).

Applying the facts alleged in this case, BAC, as the loan servicer, is not a debt collector as

defined by the FDCPA.  *See Bittinger v. Wells Fargo Bank NA*, 744 F.Supp.2d 619, 626 (S.D.Tex.

Oct. 8, 2010) (*citing Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985)).  The FDCPA

does not provide relief concerning a mortgage servicer's activities.  In the First Amended Complaint,

Plaintiffs state that they received their notice of default from BAC.  While it is not clear from the

complaint what date BAC started servicing the loan, Plaintiffs' allegations state that they received

their notice of default from BAC, indicating that BAC was the loan servicer when Plaintiffs

defaulted on the loan.  The pleadings do not allege facts bringing BAC outside of the exclusion from

being a "debt collector" pursuant to 15 U.S.C. § 1692a(6)(F)(iii).

Plaintiffs additionally assert a claim pursuant to the TDCA.  The TDCA defines a "debt collector" as " a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." Tex.Fin.Code § 392.001(6).  The statute additionally defines a "third-party debt collector" as the term "debt collector" is defined in the FDCPA, 15 U.S.C. § 1692a(6).  For the reasons assigned above, the complaint does not allege facts showing that BAC is a "debt collector" as defined in the FDCPA or the TDCA.

*DTPA*

The DTPA tie-in statute, Tex.Bus. & Com. Code § 17.50, grants a private right of action under the DTPA to a claimant seeking to recover under the TDCA.  *See* Tex.Bus. & Com.Code § 17.50(h); Tex.Fin.Code § 392.404.  To succeed, however, a claimant must show that he is a "consumer" as defined in the DTPA.  *Brandon v. Wells Fargo Bank, N.A.*, 2011 WL 6338832 (E.D.Tex. Nov. 30, 2011); *Burnette v. Wells Fargo Bank, N.A.*, 2010 WL 1026968 (E.D.Tex. Feb. 16, 2010) (adopted on March 17, 2010).  In addition to showing that they are consumers, plaintiffs seeking relief pursuant to the DTPA must show that the defendant can be sued under the DTPA, that the defendant violated a specific provision of the DTPA and that the defendant's violation is a producing cause of their damages. *Brown v. Bank of Galveston, Nat'l Ass'n*, 963 S.W.2d 511, 513 (Tex.1998).  There are two requirements for qualifying as a DTPA consumer.  To be a consumer, a plaintiff must seek or acquire goods or services by lease or purchase and the goods or services sought or acquired must form the basis of the party's complaint.  Tex.Bus. & Com.Code § 17.45; *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 351, 52 (Tex.1987).   In general, a loan does not qualify as a good or service and, therefore, the borrow is not a "consumer" as defined in the DTPA.

Page 8 of  14

*Fix v. Flagstar Bank,* FSB, 242 S.W.3d 147, 160 (Tex.App.–Ft.Worth 2007, pet. denied) (citing

*Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173-74 (Tex.1980)).

In this case, Plaintiffs have not alleged facts showing that they are "consumers" as that term

is defined in the DTPA.  Their claims arise out of a loan and do not concern the purchase or lease

of goods or services.  Plaintiffs have not alleged facts stating a claim pursuant to the DTPA.

*Negligent Misrepresentation*

Plaintiffs allege in the First Amended Complaint that BAC's agents made misrepresentations.

More specifically, Plaintiffs allege that BAC misrepresented that they would provide a loan

modification and/or postpone foreclosure.  To succeed on a claim of negligent misrepresentation,

a plaintiff must show: (1) the representation is made by a defendant in the course of his business, or

in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information"

for the guidance of others in their business; (3) the defendant did not exercise reasonable care or

competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary

loss by justifiably relying on the representation.  *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675,

686 n.24 (Tex.2002); *Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840, 850

(Tex.App.–Houston [14th Dist.] 2010, no pet.); *Biggers v. BAC Home Loans Servicing, LP*, 767

F.Supp.2d 725, 734 (N.D.Tex. Feb. 10, 2011).   The misrepresentation at issue, however, must be

one of existing fact and not a promise of future conduct.  *See Scherer v. Angell*, 253 S.W.3d 777, 781

(Tex.App.–Amarillo 2007, no pet.) (citing *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379

(Tex.App.–Houston [1st Dist.] 2007, no pet.)); *Pennington v. HSBC Bank USA, Nat'l Assoc., et al.*,

2011 WL 6739609 (W.D.Tex. Dec. 22, 2011) (adopted on January 20, 2012) (citing *Fankhauser v.*

*Fannie Mae*, 2011 WL 1630193 (E.D.Tex. Mar. 20, 2011).  "A promise to do or refrain from doing

an act in the future is not actionable because it does not concern an existing fact." *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W.3d 596, 603 (Tex.App.–Tyler 2005, pet. denied).

Plaintiffs' negligent misrepresentation allegation concerns only an alleged promise to do or refrain from doing something in the future.  Namely, Plaintiffs allege that BAC said they would send a loan modification application and told them they would postpone foreclosure.  These allegations do not concern an existing fact and are not actionable as a claim for negligent misrepresentation.

*Fraud*

Plaintiffs additionally assert a common law fraud claim as a result of BAC's alleged misrepresentations.  A fraud claim requires showing: (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.  *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex.2001).  A heightened pleading requirement applies to claims of fraud.  Pursuant to Fed.R.Civ.P. 9(b), the circumstances constituting fraud must be stated with particularity. "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir.1997).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.2003).

Plaintiffs assert that BAC agents falsely told them that they would send a loan modification application, that they could avoid foreclosure if they qualified for modification and that they did not

Page 10 of  14

need to make payments because the delinquent payments would roll into the modified loan if approved.  This claim lacks the required specificity because Plaintiffs do not allege when and where these allegedly fraudulent statements were made.  *See Pollett v. Aurora Loan Services*, 2011 WL 6412051 (5th Cir.2011).  Plaintiffs additionally do not provide details concerning the when and where Ms. Masters allegedly first told them that she would get the foreclosure postponed.  They later allege that they contacted Ms. Masters on May 31, 2010 and she told them that the foreclosure had not been postponed and that she was trying to get approval to postpone the foreclosure.  According to Plaintiffs, the last they heard from Ms. Masters on May 31, 2010, the day before the public auction, was that Ms. Masters was still trying to work out the details for postponing the sale.  These allegations concerning Ms. Masters do not establish a claim for fraud.

*Statute of Frauds and Promissory Estoppel*

Plaintiffs assert that they relied on promises from BAC agents to their detriment.  They submit that they would have borrowed money or liquidated property to reinstate their loan if BAC agents had not made promises concerning loan modification and postponement of foreclosure proceedings.  Texas law requires that any modification to an existing agreement must be in writing if the "modification encompasses or relates to a matter that must be in writing."  *Deuley v. Chase Home Fin. LLC*, 2006 WL 1155230 (S.D.Tex. Apr. 26, 2006).  Texas law provides that "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative."  Tex.Bus. & Com.Code § 26.02(b).  The statute of frauds as it relates to loan agreements encompasses agreements to delay repayment or to make financial accommodation.  *Montalvo v. Bank of America Corp.*, 2012 WL 39829 (W.D.Tex. Jan. 6, 2012).

Texas courts have not clearly stated whether traditional equitable exceptions to the statute of frauds are applicable to § 26.02.  *Id.*  They have held, however, that "there is an additional requirement that the promisor promised to sign a written document complying with the statute of frauds" for promissory estoppel to create an exception to the statute of frauds.  *Ford v. City Bank of Palacios*, 44 S.W.3d 121, 139 (Tex.App.–Corpus Christi 2001, no pet.); *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex.App.–Houston [14th Dist.] 2005, pet. denied).  There has been no allegation that BAC agents promised to prepare a written agreement memorializing the alleged oral promise to modify the loan or to postpone foreclosure.

*Wrongful Foreclosure*

A debtor may recover damages for wrongful foreclosure under Texas law when the debtor has suffered a loss or injury due to inconsistencies or irregularities in the foreclosure process.  *Univ. Savings Ass'n v. Springwoods Shopping Ctr.,* 644 S.W. 2d 705, 706 (Tex.1982)*; See also Wieler v. U.S. Sav. Ass'n of Tex.*, 887 S.W.2d 155, 158 (Tex.App.–Texarkana 1994), writ denied *per curiam*, 907 S.W.2d 454 (Tex.1995).   Plaintiffs seek damages must show an irregularity in the foreclosure sale that caused their damages.  *Id.*  In other words, when there is an allegation of a defect in the foreclosure sale, a plaintiff must show that an inadequate selling price resulted from the defect. *Peterson v. Black*, 980 S.W.2d 818, 823 (Tex.App.–San Antonio 1998).  A wrongful foreclosure claim requires a showing of: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda v. GMAC Mortgage Corp.*, 268 S.W.3d 135, 139 (Tex.App.–Corpus Christi 2008) (citing *Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex.App.–Houston [14th Dist.] 1989, writ denied).

Plaintiffs allege that Defendants lost the authority to appoint a substitute trustee or to proceed with the foreclosure sale under the terms of the deed of trust by agreeing to postpone the foreclosure sale. Under Texas law, a person's authority to conduct a foreclosure under a deed of trust is governed by the language of the deed of trust. *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671, 675 (Tex.1942). The deed of trust has not been provided to the Court, but the Court must treat all well-pleaded factual allegations as true in the context of a motion to dismiss. For purposes of the motion to dismiss, the undersigned considers it true that Defendants did not have authority under the deed of trust to appoint a substitute trustee.

Plaintiffs have not alleged, however, that the selling price was grossly inadequate or alleged facts showing a causal connection between the alleged defect and the selling price. Plaintiffs state in the First Amended Complaint that the home's market value was $116,500.00 and sold at auction for $83,659.00, or approximately 72% of its market value. Taking these pleaded facts as true, Plaintiffs have not alleged a grossly inadequate selling price as a matter of law. *See Christensen v. Bank of America, N.A.*, 2011 WL 7070568 (N.D.Tex. Nov. 4, 2011) (citing *Terra XXI, Ltd. v. Harmon*, 279 S.W.3d 781, 788 (Tex.App.–Amarillo 2007, pet. denied). A sales price above 50% of the property value is not grossly inadequate as a matter of law. *Richardson v. Kent*, 47 S.W.2d 420, 425 (Tex.Civ.App.–Dallas 1932, no writ). In this case, Plaintiffs' failed to allege facts of a grossly inadequate selling price or of a causal connection between the alleged defect and the selling price. As a result, they have not alleged facts showing that this claim is plausible.

Having carefully considered the First Amended Complaint, the motion to dismiss and the response and reply briefs thereto, the undersigned finds that Plaintiffs have not alleged facts showing plausibility of entitlement to relief as required to defeat a Fed.R.Civ.P. 12(b)(6) motion.

RECOMMENDATION

It is hereby recommended that Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (document #32) be granted and that the complaint be dismissed with prejudice.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Assn.,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So **ORDERED** and **SIGNED** this **23** day of **March, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE