**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 13, 2013

Lyle W. Cayce
Clerk

No. 12-41273

JAMES R. MILLER; ALLENE S. MILLER,

        Plaintiffs-Appellants,

v.

BAC HOME LOANS SERVICING, L.P.; NATIONAL DEFAULT EXCHANGE, L.P.,

        Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Texas

Before STEWART, Chief Judge, and DAVIS and WIENER, Circuit Judges.

CARL E. STEWART, Chief Judge:

    This case pertains to the foreclosure sale of the property located at 810 Corey Drive in Whitehouse, Texas, by Defendants-Appellees, BAC Home Loans Servicing ("BAC") and National Default Exchange ("NDE"). Plaintiffs-Appellants, James and Allene Miller, appeal the district court's dismissal with prejudice of their claims against BAC and NDE under the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code § 392.304(a), the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.41 *et seq.*, and Texas common law.

    For the reasons provided herein, we AFFIRM the district court's dismissal of the Millers' DTPA and Texas common law claims. We also AFFIRM the district court's dismissal of the Millers' TDCA claims under §§ 392.304(a)(8),

No. 12-41273

(18), and (19). We REVERSE the district court's dismissal of the Millers' TDCA claims under § 392.304(a)(14) as well as the district court's denial of the Millers' request for an accounting from NDE. We REMAND for further proceedings consistent with this opinion.

## I.

In December 2001, the Millers obtained a purchase money mortgage for the Corey Drive property from Nexstar Financial Corp ("Nexstar"). The mortgage note was secured by a deed of trust lien. Effective April 7, 2010, Nexstar assigned the note and lien to BAC, which proceeded to act as the loan servicer.

The Millers fell behind on their mortgage payments. Notwithstanding the effective assignment date of April 7, 2010, the Millers first received notice that their loan was in default from BAC on March 10, 2010.[1] The written notice warned the Millers that they faced loan acceleration and sale of the property at foreclosure auction unless they cured the default by April 9, 2010.

The Millers allege that between March 10, 2010 and May 3, 2010, they called BAC at least three times, and that each call resulted in an unfulfilled promise from a BAC call center representative to send them a loan modification application. Further, the Millers allege that at least one of the call center representatives assured them that there would be no need to make a pre-modification payment to cure the default.

On May 3, 2010, the Millers received a letter from BAC's foreclosure law firm stating that a foreclosure sale of the property would occur on June 1, 2010. The Millers allege that sometime between May 3, 2010, and May 18, 2010, a

---

[1] It is not clear on the face of the Millers' amended complaint why BAC would have contacted the Millers about the default on March 10, 2010, when Nexstar's assignment to it did not become effective until April 7, 2010. *See* Am. Compl. ¶¶ 6, 9. It also is not clear whether the mortgage already was in default at the time of the assignment.

Case 6:11-cv-00022-LED-KNM Document 55-2 Filed 09/04/13 Page 3 of 16 PageID #: 356

No. 12-41273

BAC foreclosure specialist named Victoria Masters informed them that she would make sure a loan modification application arrived, and that the foreclosure sale would be postponed while they attempted to modify their loan. The loan modification application arrived on May 18, 2010.

The Millers returned their completed application by mail on May 28, 2010. That same day, they were contacted by an agent of BAC who informed them that the foreclosure auction would proceed on June 1, 2010. On May 31, 2010, the Millers again spoke with Ms. Masters, the BAC foreclosure specialist. She informed them that no postponement had yet been approved, but that she would attempt to obtain such approval from Fannie Mae. Later that day, the Millers allege Ms. Masters represented to them that she had obtained approval from Fannie Mae for foreclosure postponement pending disposition of their loan modification application.

Notwithstanding this alleged representation of postponement, the foreclosure sale proceeded as scheduled on June 1, 2010. An individual named Carol Hampton acted as substitute trustee. The Millers allege that Ms. Hampton was an agent of NDE, acting at the behest of BAC.[2] The Corey Drive property sold at public auction. Sometime the following month, the Millers voluntarily vacated the property at the request of the purchaser.

## II.

The Millers filed suit on January 14, 2011, and amended their complaint on September 22, 2011, ultimately raising claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the TDCA, the DTPA, and

---

[2] We assume this allegation is true for purposes of reviewing the district court's dismissal of the Millers' claims. That said, NDE disputes the Millers' allegation that Ms. Hampton was its agent. In its opening brief, NDE characterizes itself as merely an "affiliated" service provider to the foreclosure law firm retained by BAC. It is not clear what NDE means by "affiliated," and whether Ms. Hampton instead would have been an agent of BAC or the foreclosure law firm.

Texas common law. On October 17, 2011, BAC moved to dismiss the amended complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). The magistrate judge filed her report on March 23, 2012, in which she recommended that the district court dismiss all claims against both defendants.[3]

After the Millers timely objected to the magistrate judge's report, the district court proceeded to adopt the report upon *de novo* review. The district court entered final judgment against the Millers on April 11, 2012.

On May 8, 2012, the Millers moved to alter or amend the judgment pursuant to Rule 59(e). Among other things, the Millers argued that it was not fair for the district court to have dismissed their claims against NDE. The Millers emphasized that BAC's motion to dismiss had not addressed their request for an accounting of the foreclosure sale from NDE or for a distribution of excess profits from the sale.[4] The Millers contended that they had not had a prior meaningful opportunity to justify those claims and, in their Rule 59(e) motion, provided legal arguments as to why those claims should survive scrutiny under Rule 12(b)(6).

In a second report, dated September 24, 2012, the magistrate judge addressed the Millers' Rule 59(e) motion. The magistrate judge recommended denial of the motion, explaining that the Millers' written objections to her first report had not encompassed the request for an accounting and distribution, even though the Millers could have objected to her prior failure to address the request. The magistrate judge further concluded that the Millers had not stated

---

[3] NDE did not move to dismiss the amended complaint. Nevertheless, the magistrate judge recommended dismissal as to both defendants, and the district court adopted that recommendation. On appeal, the Millers challenge the district court's dismissal of their claims as to NDE on the grounds that NDE did not move to dismiss and, indeed, filed answers to both the initial complaint and the amended complaint. We address this issue *infra*.

[4] Nor had the magistrate judge addressed the request in her March 23, 2012 report.

a claim for an accounting independent of their claims for wrongful foreclosure, which she already had addressed in her first report and the district court already had dismissed.

The Millers timely objected to this second report. Nevertheless, the district court proceeded to adopt it upon *de novo* review, thereby denying the motion to alter or amend the judgment. The Millers timely appealed. However, they only pursue some of their claims on appeal, namely their: (i) TDCA claims against BAC; (ii) DTPA claims against BAC; (iii) promissory estoppel claims against BAC; (iv) wrongful foreclosure claims against both BAC and NDE; and (v) request for an accounting from NDE and distribution of any excess profits.

### III.

"We review *de novo* the grant of a 12(b)(6) motion to dismiss." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003). "We generally review a decision on a motion to alter or amend judgment under Rule 59(e) for abuse of discretion." *Pioneer Natural Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Loc. 4-487*, 328 F.3d 818, 820 (5th Cir. 2003) (citations omitted). "To the extent that a ruling was a reconsideration of a question of law, however, the standard of review is *de novo*." *Id.* (citations omitted).

### IV.

**A. TDCA Claims Against BAC**

We acknowledge at the outset that the Millers do not appeal the district court's dismissal of their FDCPA claims. With respect to those claims, the magistrate judge rightly explained that the FDCPA distinguishes between "creditors" and "debt collectors." *Compare* 15 U.S.C. § 1692a(4) (creditors), *with* 15 U.S.C. § 1692a(6) (debt collectors). She then observed that the FDCPA generally applies to debt collectors, but not to creditors, except "to the extent that [a creditor] receives an assignment or transfer of a debt in default solely for

No. 12-41273

the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).[5] The magistrate judge finally noted that we previously have held that "mortgage servicing companies" and "debt assignees" are not debt collectors, and therefore are not regulated by the FDCPA, "as long as the [mortgage] was not in default at the time it was assigned" by the originator. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citations omitted). Applying these principles, the magistrate judge concluded that BAC was not a debt collector, and thus was not subject to the FDCPA because, on the Millers' pleadings, BAC already had acquired the mortgage when the Millers defaulted on it.[6]

We recount the magistrate judge's FDCPA analysis because, immediately thereafter, the magistrate judge analyzed the Millers' comparable claims under the TDCA. The TDCA similarly distinguishes between creditors and debt collectors. *Compare* Tex. Fin. Code § 392.001(3) (creditors), *with* Tex. Fin. Code § 392.001(6) (debt collectors). Its prohibitions apply only to debt collectors. *See Catherman v. First State Bank of Smithville*, 796 S.W.2d 299, 302 (Tex. App. 1990). The TDCA, however, also breaks out a third class of lien-holders, which it calls "third-party debt collectors." *See* Tex. Fin. Code § 392.001(7). It defines third-party debt collectors by expressly referencing the FDCPA definition of debt collectors found in 15 U.S.C. § 1692a(6).

In light of this reference, the magistrate judge concluded that the Millers' TDCA claims must fail for the same reasons that their FDCPA claims do. We

---

[5] The magistrate judge relied on *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000) (citations omitted), in making this observation. We expressly adopt this precedent from the Third Circuit.

[6] As discussed *supra*, in note 1, this is not apparent from the Millers' pleadings. *See* Am. Compl. ¶¶ 6, 9. However, the Millers have not challenged the district court's dismissal of their FDCPA claims on appeal. Accordingly, the district court's disposition of those claims remains undisturbed and any challenge to that disposition is waived. *See Swindle v. Livingston Parish Sch. Bd.*, 655 F.3d 386, 392 & n.6 (5th Cir. 2011) (citations omitted).

6

reject this conclusion, which erroneously affords the lone third-party debt collectors reference talismanic significance despite the fact that the FDCPA is a "distinguishable, federal statute." *See Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App. 1996) (citation and footnote omitted) (listing differences between the two statutes). The TDCA's definition of debt collector is broader than the FDCPA's definition. *See Perry*, 756 F.2d at 1208 (citation omitted). Unlike the TDCA, the FDCPA expressly excludes from its definition of debt collector: "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii).

As noted above, we held in *Perry* that this FDCPA exclusion encompasses mortgage servicing companies and debt assignees "as long as the [mortgage] was not in default at the time it was assigned" by the originator. 756 F.2d at 1208 (citations omitted). However, we also held in *Perry* that servicers and assignees *are* debt collectors, and therefore *are* covered, under the TDCA. *See id.* (citation omitted). In light of *Perry*, we conclude that BAC qualifies as a debt collector under the broader TDCA, irrespective of whether the Millers' mortgage was already in default at the time of its assignment.

The Millers' TDCA claims allege violations of Tex. Fin. Code §§ 392.304(a)(8), (14), (18), and (19). Those provisions prohibit the following:

> (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding; . . .
>
> (14) representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business; . . .

No. 12-41273

> (18) representing that a consumer debt is being collected by an independent, bona fide organization engaged in the business of collecting past due accounts when the debt is being collected by a subterfuge organization under the control and direction of the person who is owed the debt; or
>
> (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

The Millers allege that BAC repeatedly promised to send them a loan modification application and to delay foreclosure. They further allege that, notwithstanding its promises, BAC never responded to their submitted application once it arrived and proceeded to foreclose upon their property. Accepting these allegations as true at the Rule 12(b)(6) stage, we conclude that the Millers have stated a claim upon which relief may be granted under § 392.304(a)(14).

### 1. Section 392.304(a)(8)

The Millers' allegations do not demonstrate that BAC misrepresented the character, extent, or amount of the Millers' debt in violation of § 392.304(a)(8). This is because the Millers always were aware (i) that they had a mortgage debt; (ii) of the specific amount that they owed; (iii) and that they had defaulted. Nothing in the Millers' allegations suggests the BAC led them to think differently with respect to the character, extent, amount, or status of their debt—only that BAC promised to send them a loan modification application and to delay foreclosure. Accordingly, the Millers have not stated a claim upon which relief may be granted under § 392.304(a)(8).

### 2. Section 392.304(a)(14)

As for § 392.304(a)(14), however, the Millers' allegations demonstrate that BAC may have misrepresented the status or nature of the services it rendered.

8

No. 12-41273

The Millers allege that BAC "informed [Mr. Miller] that the terms of his loan could be modified to cure the default and avoid foreclosure if he qualified for the available options." They further allege that BAC agents repeatedly promised to send them an application for a loan modification, but never did until May 18, 2010. On the one hand, these allegations, at most, show that BAC promised to *send* the Millers an application, which BAC ultimately did. The Millers do not allege that BAC promised to *grant* the application.

Notwithstanding the above, the Millers also allege that BAC "informed Mr. Miller that he did not need to make payments on the loan because delinquent payments would be subsumed into the modified loan when it was concluded." Moreover, the Millers allege "[t]hey were informed that the completed application must be submitted by June 17, 2010." Finally, the Millers allege that Ms. Masters "informed Mr. Miller that she had obtained approval to postpone the [June 1] foreclosure sale." These allegations, at the least, show that BAC promised to *consider* the application before foreclosing on June 1, which the Millers allege that BAC did not do.

In light of this showing, we conclude that BAC may have harmed the Millers by causing them, for example, to decline to liquidate property or seek alternative financing before the June 1 foreclosure date—pending BAC's disposition of their application. Accordingly, the Millers have alleged sufficient facts to state a claim against BAC, pursuant to § 392.304(a)(14), for misrepresenting the status or nature of the services that it rendered. We reverse the district court's dismissal of the Millers' TDCA claims as to that basis, and remand for further proceedings consistent with this opinion.

    3.    **Section 392.304(a)(18)**

With respect to § 392.304(a)(18), the Millers contended before the district court that BAC had misrepresented it was an independent organization responsible for collecting the Millers' debt when, in fact, Bank of America, N.A.

owned the Millers' mortgage by assignment, and BAC was merely Bank of America's servicer. Irrespective of this contention's possible validity, the Millers' amended complaint contained no allegation about any representation by BAC that it was an independent debt collector. Because the Millers have not alleged any facts stating that BAC was a subterfuge organization for Bank of America, they have not stated a claim upon which relief may be granted under § 392.304(a)(18).

  4.  **Section 392.304(a)(19)**

Finally, even though § 392.304(a)(19) appears to be a catch-all, or residual, provision for proceeding under the TDCA, the Millers did not allege any specific deceptive acts or practices by BAC that could constitute a violation of the provision. Instead, their amended complaint refers vaguely to BAC "using a false representation or deceptive means to collect a debt." *See* Am. Compl. ¶ 41(d). Such a pleading is not sufficient to overcome dismissal under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citations omitted). The Millers, thus, have not stated a claim upon which relief may be granted under § 392.304(a)(19).

**B. DTPA Claims Against BAC**

The magistrate judge rejected the Millers' claims under the DTPA, explaining that the statute protects "consumers" and that mortgagors (loan borrowers) are not consumers within the meaning of the statute. We agree that this is the general rule, but restate the test slightly differently to account for a necessary nuance.

"The DTPA protects consumers; therefore, consumer status is an essential element of a DTPA cause of action." *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App. 1996) (citation omitted). "In order to qualify as a consumer under the DTPA, two requirements must be established. First, the person must seek or acquire goods or services by purchase or lease. Second, the goods or

services purchased or leased must form the basis of the complaint." *Id.* (citations omitted); *see also* Tex. Bus. & Com. Code § 17.45(4) (providing the statutory definition of consumer).

"Generally, a pure loan transaction lies outside the DTPA because money is considered to be neither a good nor a service. However, subsequent cases have limited [this] doctrine." *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 133 (Tex. App. 2001) (citations omitted). A loan sometimes may constitute a basis for consumer status under the DTPA. *See, e.g.*, *Walker v. F.D.I.C.*, 970 F.2d 114, 123 (5th Cir. 1992) (collecting citations in which Texas courts have departed from the "facially simple statement" that a "pure loan transaction lies outside the DTPA"); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 706-08 (Tex. 1983) (rejecting the argument that plaintiffs could not qualify as consumers because their transaction with the defendant bank was a lending transaction, where the loan was used to finance the construction of a house).

A mortgagor qualifies as a consumer under the DTPA if his or her primary objective in obtaining the loan was to acquire a good or service, and that good or service forms the basis of the complaint. *Compare Flenniken*, 661 S.W.2d at 708 ("[T]he Flennikens make no complaint as to the Bank's lending activities. Unlike Lewis, the Flennikens did not seek to borrow money; they sought to acquire a house. The house thus forms the basis of their complaint."), *with Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 175 (Tex. 1980) ("Lewis approached Riverside Bank with one objective; he sought to acquire money.").

Here, the Millers have alleged that their mortgage was a purchase money loan, meaning they obtained it to acquire their property on Corey Drive. However, the purchase money loan does not form the basis of the Millers' complaint; rather, the Millers' DTPA claim against BAC is based entirely on their attempted *modification* of that loan. Such modification is akin to refinancing in that it is not sought for the acquisition of a good or service, but

11

rather to finance an existing loan on previously acquired property. *See Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 455 (E.D. Tex. 2011) ("[A] modification of an existing loan . . . is analogous to refinancing services. Refinancing is simply an extension of credit that does not qualify Plaintiff as a consumer." (citations omitted)); *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App. 2007) (holding that "the refinance cannot qualify as a good or service under the DTPA" because the plaintiffs "had already purchased their house [and thus the] refinance merely extended credit" (citation omitted)).

As in *Ayers*, "[h]ere, the alleged loan modification was not a part of the financing scheme to acquire a house. It is an entirely separate and distinct transaction, sought after the purchase of the house was complete." 787 F. Supp. 2d at 455. The Millers' complaint is therefore based on "a pure loan transaction," meaning the Millers do not qualify as consumers under the DTPA. *See Ford*, 44 S.W.3d at 133 (citations omitted). Accordingly, we affirm the district court's dismissal of the Millers' DTPA claims.

C.    **Promissory Estoppel Claims Against BAC**

The Millers allege that they would have borrowed other funds, or liquidated property, to cure their default but for their detrimental reliance on repeated assurances from BAC's agents that (i) a loan modification application was forthcoming; (ii) it would not be necessary to cure their default in the interim; and (iii) the foreclosure sale would be delayed pending disposition of their application. Adopting the magistrate judge's recommendation, the district court dismissed these claims for common law promissory estoppel as barred by Texas's statute of frauds.

On appeal, the Millers focus their challenge on a question of civil procedure. They contend that the district court erred in ruling on the statute of frauds because the statute of frauds is an affirmative defense that BAC never

pled in an answer but, rather, raised only in its Rule 12(b)(6) motion.[7]  We conclude that the district court's dismissal was not error.

"[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) (citation omitted); *see also Fisher v. Halliburton*, 667 F.3d 602, 608-09 (5th Cir. 2012) (citing *Kansa*, 20 F.3d at 1366, and noting that a claim may properly be subject to a Rule 12(b)(6) motion where the complaint itself establishes the applicability of an affirmative defense).  It is well-settled in Texas that agreements pertaining to loans in excess of $50,000 must be in writing, including modifications of those agreements.  *See* Tex. Bus. & Com. Code § 26.02.

Here, the entirety of the Millers' allegations against BAC concern oral promises by either Ms. Masters or unnamed call center representatives. Importantly, the Millers do not allege that BAC promised to sign a prepared document that comports with Texas's statute of frauds, which would have memorialized those promises.  This omission is fatal to the Millers' promissory estoppel claims.  *See Martins v. BAC Home Loans Servicing, L.P.*, ___ F.3d ___, 2013 WL 3213633, at *5 (5th Cir. June 26, 2013) (collecting citations and holding that promissory estoppel only overcomes Texas's statute of frauds where the alleged oral agreement to modify a loan is accompanied by the lender's or its agent's promise to sign a written agreement validating the oral agreement that itself satisfies the statute of frauds).[8]

---

[7] Unlike NDE, BAC did not file an answer to either of the Millers' complaints.

[8] *Garcia v. Karam*, 276 S.W.2d 255 (Tex. 1955), which the Millers cite in their opening brief, did not implicate promissory estoppel and did not arise in the home loan modification context.  *Garcia* therefore is not inconsistent with *Martins*.

No. 12-41273

For these reasons, BAC was permitted to raise the statute of frauds as a defense in its Rule 12(b)(6) motion. The district court did not err in dismissing the Millers' promissory estoppel claims on that basis.

**D.     Wrongful Foreclosure Claims Against BAC and NDE**

The Millers argue that the district court erred in dismissing their common law wrongful foreclosure claims against BAC and NDE. Under Texas law, a wrongful foreclosure claim ordinarily requires a showing of (i) "a defect in the foreclosure sale proceedings"; (ii) "a grossly inadequate selling price"; and (iii) "a causal connection between the defect and the grossly inadequate selling price." *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. 2008) (citing *Charter Nat'l Bank—Hous. v. Stevens*, 781 S.W.2d 368, 371 (Tex. App. 1989)). The district court adopted the magistrate judge's finding that the Millers had satisfied the first element of a wrongful foreclosure claim, but had not alleged facts satisfying the second and third elements. On appeal, the Millers do not dispute the magistrate judge's finding. Instead, the Millers argue that they are entitled to a less stringent standard because they are not attacking the validity of the foreclosure sale but, rather, are seeking only compensatory damages arising from the sale.

The Millers are correct that the above three-part standard—in particular the requirement to show a grossly inadequate selling price—does not apply to all wrongful foreclosure claims under Texas law. However, the cases on which the Millers rely establish only a particularized exception whereby the plaintiff-mortgagor may avoid showing a grossly inadequate selling price if he or she alleges that the defendant-mortgagee (lender) deliberately "chilled" the bidding at the foreclosure sale. *See, e.g.*, *Charter Nat'l Bank*, 781 S.W.2d at 371 (holding that a mortgagor is not required "to prove a grossly inadequate selling price in a situation where the bidding at a non-judicial foreclosure sale was deliberately 'chilled' by the affirmative acts of a mortgagee and the injured mortgagor seeks

No. 12-41273

a recovery of damages rather than a setting aside of the sale itself" (emphasis omitted)). The cases do not stand for the Millers' broader proposition that mortgagors are entitled to a less stringent standard simply by pleading that they confirm the foreclosure sale and seek only damages arising from that sale.

Here, the Millers never alleged that BAC and NDE interfered with the bidding process of the foreclosure sale. The only defects they alleged were vague failures to comply with Texas statutory requirements in effecting the sale, and that BAC had agreed to postpone foreclosure. *See, e.g.*, Am. Compl. ¶¶ 32-33, 65-68. Thus, the "chilled bidding" exception does not apply. Because the exception does not apply, and because the Millers do not dispute their failure to have alleged a grossly inadequate selling price, we affirm the district court's dismissal of their wrongful foreclosure claims.

E.  **Request for an Accounting and Distribution from NDE**

Finally, the Millers argue on appeal that the district court erred in denying their motion to alter or amend the judgment pursuant to Rule 59(e). In that motion, the Millers had contended to the district court that its Rule 12(b)(6) dismissal of their claims had not contained any discussion of their request for an accounting from NDE, and that NDE had not moved to dismiss their claims on any basis.

In light of our holding reversing the district court's dismissal of the Millers' TDCA claims under § 392.304(a)(14), we also reverse the district court's dismissal of the Millers' request for an accounting from NDE.

V.

For the foregoing reasons, we AFFIRM the district court's dismissal of the Millers' DTPA and Texas common law claims. We also AFFIRM the district court's dismissal of the Millers' TDCA claims under Tex. Fin. Code §§ 392.304(a)(8), (18), and (19). We REVERSE the district court's dismissal of the Millers' TDCA claims under § 392.304(a)(14) as well as the district court's denial

of the Millers' request for an accounting from NDE.  We REMAND for further proceedings consistent with this opinion.